SONNENFELD MILLINERY COMPANY, Respondent, v. PEOPLE'S RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, December 4, 1894.

1. **Law and Fact:** NEGLIGENCE. An instruction of nonsuit in an action based on alleged negligence is proper, only when neither the evidence as a whole, nor any legitimate inference therefrom, will sustain a finding for the plaintiff.

2. **Street Railways:** DUTY OF ONE WHO CROSSES RAILWAY TO LOOK AND LISTEN. The duty of one who crosses a railroad to look and listen for approaching trains applies to the crossing of a street railway operated by cable.

3. ———: ———: DUTY OF MOTORMAN. A motorman in charge of a car on such railway is not under the duty of stopping his car on seeing a person on the street near the railway tracks, if such person, when thus seen by him, is not in a position of peril. An instruction on that subject, which ignores this qualification, is held to be erroneous.

4. ———: DAMAGES FOR NEGLIGENCE: INTEREST. The verdict in an action for damages, resulting from a collision in consequence of the negligence of the defendant, should not include interest.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*J. Hugo Grimm* for appellant.

*M. B. Jonas* for respondent.

BOND, J.—This suit was begun before a justice of the peace to recover damages, caused to plaintiff's delivery wagon by the alleged negligence of defendant's servants in running a train of cable cars against it. The case was tried before the justice, and judgment given for plaintiff for $40, from which an appeal was taken to the circuit court, where plaintiff again had judgment for the same amount, from which an appeal was taken to this court.

On the trial the plaintiff gave evidence tending to show that in January, 1892, it was a business corporation, and as such employed one John Larkin as the driver of its delivery wagon; that said driver in making deliveries stopped his wagon at a house on the corner of Lafayette and Texas avenue for the purpose of leaving a bundle; that, when he returned to his wagon, he saw defendant's train of cable cars, which had stopped at Jefferson avenue (one block east of said wagon), was beginning to start just as he climbed on his wagon; that he turned to go east, to do which he was compelled to cross defendant's track, and to drive slowly on account of the snow on the ground; that the distance between the two blocks was three hundred feet; that, when the front wheels of his wagon got on the car track, he observed that the train of cars was

distant about one hundred and fifty feet; that the grip-man made no motion to slow up; that he (the driver) would have had time enough to cross the track if the gripman, who was looking at him, had made any effort to pull up his train; that the gripman, however, did not do this until he saw his train must collide with the wagon; that he (the driver), while attempting to cross the car track, struck his horse with the lines, so as to get over before a collision; that the gripman did not ring his bell until the wagon was on the track, nor use the brake to stop the car until he came within twenty-five or thirty feet of the wagon; that the wagon was completely smashed, and the cost of its repair was $40.

Defendant gave evidence tending to show that the gripman on its train of cars, when the same was in the middle of the block between Jefferson Avenue and Texas Avenue, saw the plaintiff's wagon ahead of him about three or four feet from the track, going west; that the gripman tapped the bell a few times going along; that the driver of the wagon turned across the track at a point about fifteen or twenty feet from the grip car; that the brakes were applied when the wagon turned across the track; that, before the car was stopped, it struck the wagon; that, on account of the condition of the track that day and its grade, the car could not be stopped in less than twenty-five feet.

The first point urged for reversal is, that plaintiff's instruction in the nature of a demurrer to the evidence should have been given. Such an instruction is only warranted when neither the evidence as a whole, nor any legitimate inference therefrom, will sustain a finding for the plaintiff. It was properly refused in this case, since there was evidence offered by plaintiff tending to show that the gripman observed its wagon upon the track at a point seventy-five to one hundred and fifty feet distant, and that he might have stopped

the car, by using the brakes, within a distance of twenty-five feet; that he failed to make any application of the brakes, until the car had come within less than twenty-five feet of the crossing wagon, and that the driver was using ordinary care, by whipping his horse, to get across the track and avoid a collision.

Upon the theory thus arising upon the evidence of plaintiff, the jury under proper instructions might have found a verdict in its favor. *Hickman v. Railroad*, 47 Mo. App. 65; *Smith v. Railroad*, 52 Mo. App. 36; *Sullivan v. Railroad*, 117 Mo. 214.

Defendant next complains of the refusal by the court of the following instruction:

"The court instructs the jury that it was the duty of the person driving plaintiff's wagon, before crossing defendant's railway tracks, to look and listen for approaching railway cars; and, if you find from the evidence that the person in charge of plaintiff's wagon failed to look and listen, and that by looking and listening he might have observed the approaching car in time to avoid a collision, and that by the exercise of ordinary care he might have avoided the collision, then you will find for the defendant, unless the servants of defendant saw, or by the exercise of ordinary care could have seen, the horse and wagon in time to have prevented the collision."

The instruction in question was obviously copied from the one passed on by this court in the case of *Hickman v. Railroad, supra*. It was held in that case, that such an instruction should have been given in a suit for damages, caused by a collision against a street car line propelled by electricity. The same doctrine was affirmed in *Smith v. Railroad, supra*, where the action was, as in the present case, against a street car line propelled by a cable. It follows, therefore, that the ruling of the trial court in refusing the

instruction in the present case would have been error entitling the appellant to a reversal, had it been predicated upon the defendant's theory of the evidence, which was to the effect that the plaintiff's team traveled in the same direction with the car.  According to defendant's testimony, a bell was sounded when its train of cars had reached the middle of the block, while the driver of plaintiff's wagon was going westward on the street three or four feet outside of the car track. Defendant's evidence further tended to show that the driver only turned across the track after the train of cars had gotten within a distance of twenty feet of his vehicle, when he suddenly, without heeding the sound of the bell, turned his horse and vehicle across the track.  As, however, the instruction was not based on any theory of the evidence stated therein, and as the plaintiff's evidence was to the effect that the team was traveling towards the car, and that the driver must have seen the car, had he looked, we can not put the court in the wrong for refusing the instruction.  But the court clearly erred in authorizing the jury to allow interest on the amount of damages assessed.  *State ex rel. v. Harrington*, 44 Mo. App. 301.  The court also erred in giving an instruction making it the duty of the gripman to stop the car, if he "saw the wagon on the track at a sufficient distance from said wagon to have given him time," without the further qualification that the wagon was sufficiently near to the car to be reasonably considered in a position of peril. *Boyd v. Railroad*, 105 Mo. 379.  The result is, the judgment herein is reversed, and the cause remanded.  All concur.